Good morning, may it please the court, opposing counsel. My name is Claire Curtis and on behalf of the Federal Public Defender, I represent Willie Yates in this case. I would like to begin by saying that Section 1102A3 is not a crime of violence in the United States Sentencing Guidelines because it does not include a use of force as defined by the United States Supreme Court and it is not an enumerated offense. For that reason, Mr. Yates was improperly categorized as a career offender because he lacked two qualifying predicate offenses. Additionally, the District Court imposed a substantively unreasonable sentence on Mr. Yates despite the application of the career offender enhancement to his case violated the Sentencing Commission's express policy statement about the career offender enhancement and despite the fact that he had not previously been found to be a career offender at his original sentencing and there was no material change in his record when he was in front of Judge Boyko at resentencing. To begin with the somewhat long-suffering issue of crime of violence predicates an Ohio robbery. Certainly this Court is aware the United States Supreme Court said in the 2010 decision Johnson v. United States that a use of force has to be strong physical force. It has to be a substantial degree of force. Mere touching is not sufficient to satisfy use of force in the Armed Career Criminal Act and as this Court has pointed out in a number of cases, similar reasoning applies in a guideline situation. Now this Court has always looked to Ohio's interpretation of its own case law to understand how to evaluate offenses. Ohio has been unequivocal that minimum mere touching contact is sufficient to satisfy Ohio robbery under the A3 subsection. So what cases in particular would you point us to on that? Certainly State v. Carter is an excellent example. State v. Carter points out that contact they use the language however minuscule is sufficient to satisfy robbery. I would also point the Court to State v. Copeland which is in briefing. In that case a State appellate court points out that mere pushing would be sufficient to satisfy robbery because the level of contact that's required is so minimal. Now I'm sure that my opponent will get up and talk about this Court's unreported decision in United States v. Mansoor. Mansoor is outdated for a variety of reasons. I know I don't have to tell this Court that the case law on crimes of violence and armed career criminal and career offender predicates is evolving nearly daily. Mansoor is a number of years old now. It's an unreported decision that this Court isn't bound by to begin with, but if this Court were to look at Mansoor for direction how to evaluate Ohio robbery at this point, it should be dispensed with. So this violent force capable of causing physical pain or injury to another person. So why is pushing not enough under this Copeland case? Why is that not enough to meet the Johnson standard? Because both Johnson and subsequently in Castleman the United States Supreme Court has said that contact that would create bruising for example is not a sufficient amount of force to be violent physical force. Additionally this Court should look at Ohio's own definition of force not just in case law but in statute. So in 2901 A1 force is defined in Ohio as any violence, compulsion or constraint. Now we know from the United States Supreme Court's recent decision in Mathis that this Court should consider alternative means. But the rest of that definition is any violence, compulsion or constraint physically exerted by any means upon or against a person or thing. Now put the thing to the side but against a person. Why isn't that sufficient to meet the Johnson 2010 definition? Thank you Your Honor. Again we're back around to it's not a question of whether there's contact. It's a question of whether that's violent or strong contact. And both Castleman and Johnson have said touching that causes bruising, mere touching is not sufficient. But compulsion or constraint could be mere touching. And in fact we cite to the District Court of West Virginia's analysis in Litzy but Litzy evaluates an Ohio Supreme Court case called State v. Davis. And State v. Davis the Ohio Supreme Court talks about how expansive it's definition of force actually is. So State v. Davis again Ohio's interpretation of it's own law says that it's sufficient to establish force if the defendant's conduct impresses on the victim fear likely to induce a person to part with property. Not injury but just fear that would make you say hand your wallet over, hand your purse over. In this court should rely on that analysis of Ohio's own laws. So one we could think of hypos which might or might not be helpful. One hypo is suppose somebody is going to a concert and they have the concert tickets in their hand, foolishly, and someone runs by and pulls the tickets out without touching them or not. Is that covered by the Ohio robbery statute? And if so does that show anything about our case? It's an excellent hypo. I do believe and it's not cited in briefing but there is Ohio intermediate appellate court commentary that said that would not be sufficient to satisfy Ohio robbery. There's a similar factual case I can certainly provide to this court in a supplement where it's actually a very similar scenario. Someone has their wallet in their hand and the individual runs by and grabs it. There's no contact. So that particular case with the wallet in the hand I couldn't remember whether what the state court said. Was that robbery under Ohio law or not? The Ohio intermediate court that decided that case said that was not sufficient for robbery. But again the critical inquiry for this court is not whether there's contact at all, it's how strong or violent that contact is. And what Ohio has said about what robbery requires is that mere touching is sufficient to satisfy the statute. Well we have two 2017 decisions from this circuit, this Jonel Rice and Omar Hanson that have applied Mansour. Yes your honor. Conclude that Ohio robbery conviction is violent, a violent felony for ACA and the guidelines? Yes and I know Judge Gilman that you were on the panel for Rice. This court certainly is not compelled to follow either Rice or Hassan because they are unpublished orders but I'll give this court a substantive reason for not doing it. And before you get to the substantive reason, aren't those both unpublished orders as opposed to even opinions? They're from what we call our Rule 34 docket. You're absolutely correct Judge Moore. Those are not even unpublished opinions or unpublished orders so that's another level down of influence or persuasive authority that this court should consider. But the substantive reason? Substantively, particularly in Rice, these are both two page orders, very brief with essentially no analysis. They're very conclusory with all due respect. The defense counsel in Rice clearly made a factual argument, perhaps misunderstanding how the categorical approach works in this context because the court in Rice does point out that there was a factual argument made so it seems perhaps, at least in that case, the arguments were not properly framed for what the United States Supreme Court has directed us to do in these instances. But again, from an analytical perspective, these decisions don't provide this court with any analysis and I think this court will find in reviewing Mansour that there's a similar problem there. Mansour is an unpublished case that this court is not bound by but its analysis is very brief. It's really just one page discussing Ohio robbery. It's very conclusory with little analysis. Additionally, I suspect my opponent will get up and talk to this court about its recent decision in United States v. Patterson, which is a case that addresses Ohio's aggravated robbery statute under the A1 subsection. I do want to note for this court why Patterson is so different and doesn't provide guidance in this case. Aggravated robbery that was indicated possession of or used. The Ohio Supreme Court has been unequivocal in State v. Evans, which is a case that Patterson relies on in its analysis, that use of a deadly weapon in this context is an implied threat of force. And so it stands to reason that this court would conclude that since that's Ohio's interpretation of its own case law, a threat can be read in there. Ohio's robbery statute under the A3 subsection does not include any deadly weapon. So the analysis is very different for this court. Additionally, there is no case law from the Ohio Supreme Court saying, hey, we should imply a threat of force here. In fact, the Ohio Supreme Court itself is saying we have a very expansive definition of force, a very broad definition of force. And that's where we come into problems in evaluating crime of violence, because it covers conduct so far outside how the United States Supreme Court has defined force in this context. Additionally, there are two circuits that, after briefing was concluded in this case, have found that similar state statutes, similar state robbery statutes are not crimes of violence. I won't talk about those cases in detail in fairness to my opponent, because we have not provided them in a 28-J. Could you give us the sites to them? I will, and I will file a 28-J when I return to my office this week. They're United States v. Nichols out of the Tenth Circuit, which is 2017 U.S. Applexus 7101, and U.S. v. Winston, which is a Fourth Circuit case, 850 F3rd 677. Now, those both considered robbery statutes that similarly required uses of force. And in both of those cases, the courts concluded there's conduct that's too broad here. Mere touching is also covered by this robbery statute, so it cannot qualify as a crime of violence. And again, I won't belabor that point in fairness to my opponent, because we have not provided them in a 28-J letter. If you could just file a Rule 28-J letter, and then your opponent obviously can file a responsive letter, that would be fine. I will, Your Honor. Thank you. I would also highlight for the Court there is an issue of mens rea here. The Ohio Supreme Court held in State v. Tolliver that there is no attendant mens rea to the force element of Ohio robbery. Now, the underlying mens rea for robbery and aggravated robbery is the underlying theft, which is a purposeful or knowing mens rea. But this Court has held, and the United States Supreme Court has held, that mens rea of recklessness is not sufficient. But why isn't it enough for there to be a mens rea for the other elements and not for the force element? Because the triggering element of the enhancement for a career offender is the use of force. And it's that use of force that provides that enhancement. So it's the use of force that Are you saying that Begay itself would invalidate then using this statute because of the lack of mens rea for the force element, that Begay itself says that? Begay doesn't specifically address State statutes where there is an underlying mens rea. To the best of my knowledge, the Supreme Court has never addressed that. But I do believe it provides helpful authority to suggest that would be the correct conclusion for this Court to reach. Is there any Court that has said that you need to have the element of mens rea vis-a-vis the force element of a statute like a robbery statute? Yes, Your Honor. Patterson does actually a nice job of compiling those cases. Certainly the Fourth Circuit in United States v. Doctor has come to the opposite conclusion that I'm advocating for. But part of what I would ask this Court to consider is the government's benefits in having a reduced burden in State court for establishing robbery. To some degree, not considering the mens rea that applies to the triggering element allows the government to sort of have it both ways. They get the benefit of not having to establish that element, that mens rea element at trial at the State court level, but then can they also get the attendant benefit in arguing the enhancement applies because of the underlying mens rea. And I can see that I'm out of time, so I'll leave it at that. Thank you. Any other questions? Thank you. Thank you. May it please the Court. My name is Dan Ranky. I represent the government in this appeal. 29-11-02A3 robbery does qualify as a crime of violence under the Career Offender Force Clause 4B1.2A requires that as an element it has the attempted use or threatened use of physical force against a person. That's exactly what A3 robbery has. There's two parts to A3 robbery. The attempt or the commission of a theft offense and the use or threatened use of physical force against the person of another. It actually mirrors the language of the Career Offender Force Clause and it is a crime of violence. But Johnson, 2010, says the force must be violent force capable of causing physical pain or injury to another. So doesn't Johnson, in a sense, cause us to have to look deeper at what the meaning of force is in the Ohio statute? It does. And the Ohio statute apparently defines force as any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing. Now, I understand theft requires the theft be from a person. So we're not going to worry about the thing part, I think, in the commission of force in Ohio, any violence, compulsion, or constraint physically exerted, suggesting that it's more than violence. Because in addition to the word violence, there's compulsion or constraint. I think, and this was anticipated during Appellant's argument, you need to go back to Manser where this Court found A3 satisfied, John. Yeah, but Manser is not published. So we're not bound by Manser. We're only educated by what the court in Manser said. And then we've got this district court from West Virginia that goes the opposite way, which might be equally persuasive to some or more persuasive to others. So we really have to confront this. And then we have these two unpublished orders of recent origin, but are of less value than Manser because they don't have any analysis at all. Well, they have more value than Litzy. Why? Because Litzy had an analysis, whereas these two recent ones are one and a half pages of... Litzy ignored, first of all, ignored Manser. Litzy ignored the fact that the Ohio statute, robbery statute, specifies person. Litzy went into force against the thing. So we have to say that Litzy was wrong on that, I guess. And it's been criticized by a lot of district courts. I'm sorry. I didn't hear you. I just... He said it's been criticized. Litzy was criticized. It's been criticized by many district courts, at least in the Northern District of Ohio, for those reasons. That it ignored Manser, didn't even mention it, and that it focused on Thing when the A3 robbery, that doesn't apply to A3. So I'm willing to put the Thing analysis of Litzy to the side and say, for myself, maybe Litzy is wrong on that. But why isn't the rest of Litzy correct? And you're proper in saying it would have been nice for Litzy to recognize that the Sixth Circuit in an unpublished decision had gone the other way in Manser, but Litzy is from the Fourth Circuit. So the Litzy court was not bound by Manser. So we don't know why they didn't mention Manser. Why is the Litzy's analysis wrong, apart from the Thing? Well, again, because I think it ignores the consistency between the crime of violence definition and the A3 robbery definition in Ohio. But it's saying, among other things, this definition of force as any violence compulsion or constraint, doesn't that go broader than the Johnson 2010 Supreme Court definition of what can be violent force? Well, Johnson does say capable of causing physical pain or injury to another person. And that really mirrors A3 robbery. I mean, it's the commission of use or threatened use of physical force against the person of another. Do you agree that Johnson affects the value of Manser? Does it undermine? No, I don't believe Johnson does. That's been talked about. In accordance. Tell me why, please. Well, because Manser just applied the categorical approach and looked at the elements and found that it required the same use or threatened use of physical harm. It includes the threatened use. And that would seem to quarrel with Johnson, that the violence has to be more severe. It does, but really, the threatened use of force is very similar to the use of force that's talked about in A3. What about Castleman now? Castleman's a Supreme Court decision in 2014, which is subsequent to Manser. And didn't it say the common law meaning of force of offensive touching? It didn't invalidate Manser. Castleman dealt with whether Tennessee's domestic violence, misdemeanor domestic violence, qualified as a misdemeanor crime of domestic violence for 922G purposes. And the court found that a common law battery was even the slightest offensive touching. And the Congress intended to apply the common law standard in that circumstance. It didn't address the physical force within the career offender context. And it really did not invalidate the reasoning of Manser. So what do you say we should do about these various Ohio Supreme Court and Ohio Court of Appeals decisions that are applying the Ohio robbery statute to a variety of different circumstances? Well, Tolliver is an interesting case in that it tried to kind of clarify somewhat how Ohio's applied that. Well, I thought Tolliver was going to the mens rea issue. It did go to the mens rea. You're saying it was more broadly applicable? I think it is. I think if you read it, it's more broadly applicable. Because it does say that A3 robbery has that mens rea also. Or it doesn't need the mens rea because it has the mens rea from the underlying theft offense. But suppose, well, why don't we take my hypo that I gave your opponent. If somebody is holding tickets in their hand for a game or a concert, and someone runs by and pulls them out, would that constitute robbery under the Ohio law? I don't believe so. So then that's not a good hypo for analyzing the degree of force. The purse snatching cases, which are from Ohio, involve purses being taken from what are called elderly females. Query what that means. And those are held by Ohio courts to constitute robbery under the Ohio statute, right? Yes. And in one case that's actually slated in the appellant's brief, I think it's Burris or Breck, I can't remember exactly. The court actually found that grabbing it off the person was physical injury, was the use or threatened use of force to cause physical injury. And you would say that that qualifies then under Johnson? Yes. So can you think of any instance where the Ohio robbery statute has been used that would not qualify as violent force under Johnson? Or are you saying that all of the Ohio cases that you and your opponent have cited do, when it is held to be robbery under Ohio law, it does involve force? A3 robbery, yes. It does involve the force of Johnson? A3, yes. And Patterson, the public counsel's writing that Patterson's a different part of the robbery statute. But it's still instructive in that it found, it's really more instructive to the mens rea part of this argument, which if the court's all right with me going to that. Yeah, if you would go to that. Because what is required under federal law? Your opponent cited Begay as saying that we need to have mens rea as to the force element. How do you respond to that? I don't think Begay really stands for that. I think really when you look at McMurray from this court, you know... Which I know well, yes. McMurray says it has to be more than recklessness to constitute a crime of violence. And Ohio A3 robbery is more than recklessness. But it's more than recklessness not with respect to force. With respect to force, there's no mens rea under Tolliver. But it takes the force of the theft offense, which is part of the A3 robbery. And the theft offense is purposeful, knowing and purposeful. Knowing and purposeful what? Knowing and purposeful intent. So it doesn't go to a strict liability type of recklessness that is contemplated in revised code 2901.21b, which the Ohio Supreme Court discusses in Lester when it was talking about aggravated robbery and brandishing. And Tolliver tries to clarify that point too and says that that incorporates, the robbery incorporates the intent for theft. So it's not recklessness. It's purposeful. But I understand that the theft definition requires purposeful activity. But the force is added then after the word theft in the Ohio statute. And according to Tolliver, there is no mens rea with respect to the force aspect. It also says though to go to where there's a situation where 2901.21b would apply, it must be a complete absence of culpability before that statute can be applied. And that's not really what we have when we read the A3 robbery statute. There isn't a complete absence of culpability. It's when read together, it's the theft and then the use of force or attempted use of force. And Tolliver tried to clarify what it called imprecise use of 2901.21b by other courts. But Tolliver was pretty clear that there was no requirement of mens rea vis-a-vis the use of force so that any use of force would qualify under Tolliver. It's the mens rea only went to the theft component, right? But that also, as the district court found, that was all consumed within the robbery as well. That provided the mens rea for the robbery. And so it didn't revert to recklessness. And that's really what Tolliver found. And that in other cases, the Supreme Court hadn't been as clear when dealing with 2901.21 and its application. Apart from Begay, is there any case that you would point to that would be helpful on this? You've mentioned McMurray. Anything else that would help us out on the mens rea issue? I can't think of anything right now, Your Honor. What do you say about the length of the sentence? The court considered... The court actually varied down. When the court found him to be a career offender, but then the court actually varied down based upon the defendant. I think it's really going to depend on the first issue then, isn't it? Yeah, it does. I mean, if the court found that the career offender was appropriate, then the sentences really wouldn't be an abuse of discretion. And then the court did vary down based upon Mr. Yates' health. He had depression and also he had been... Displayed good behavior while he was incarcerated during the whole... As this court knows, this case has gone back and forth a number of times. And Yates had been incarcerated for a number of years during that process. He'd been a good prisoner. And the court used those factors to vary down. So under a substantive reasonable standard, I think the district court was fairly clear as to why it varied down or why it imposed the sentence that it did. And it wasn't an abuse of discretion. So long as this court agrees that the career offender was appropriate given the A3 Ohio robbery. So if there are no further questions, I would ask that this court affirm the decision of the district court. Thank you. Thank you. Thank you, Your Honor. Just a few brief points on rebuttal. I believe the government is advocating for this court to just do a word-by-word analysis. A3 uses force. The guidelines use force. That's the end of the analysis. But the United States Supreme Court directs this court to consider the minimum conduct that's criminalized by the statute in Moncrieff v. Holder. Ohio has made clear that a minimum amount of contact is sufficient to satisfy Ohio's robbery statute. And if I were to write this court's syllabus case law, I would ask it to say that under United States v. Castleman, which is Judge Gilman was getting to earlier with the government, has held that a minor use of force is not a violent use of force. But for Ohio robbery, it is. That that is not adequate to satisfy the guideline definition. And to address what Judge Moore was discussing earlier, the hypothetical with the tickets, the case that dealt with the grabbing of the wallet with no contact was State v. Furlough. It's 80 Ohio App 3rd 146 if this court wants to take a look at that. There is, for example, a 10th district case in Ohio from 2000 where they point out in discussing another case with no contact, we noted that there was no evidence that the victim was pushed, struck, touched, or in any way injured, and then concluded it couldn't be Ohio robbery. Touched being the minimum amount of contact that satisfies the statute more broadly than the amount of force that's required to satisfy. It's been so long, I'm just curious, does anybody even know anymore what the crime, how this crime actually, this robbery occurred? In Mr. Yates' own individual case? Well, yeah. With all due respect, Your Honor, it was a 1999 conviction. I haven't ever spoken about the facts, nor, of course, could this court inquire as to the facts because of the confines of the categorical approach. Are there Ohio cases that say touched constitutes robbery? I know you've quoted from this furlough case, but that says there's no evidence that the person was touched or... That quote actually is from State v. Wolford, which is a 10th district case in Ohio from 2000. Basically, if you could find a case that said that mere touching is enough, that would not be violent under established Supreme Court of the U.S. case law. Yes, Your Honor. I would, again, direct this court to State v. Carter and State v. Copeland. State v. Carter noting that contact, however minuscule, is sufficient, and State v. Copeland noting that even pushing, which I think we can all agree is attendant to touching, is sufficient to satisfy a use of force. Just very briefly to address Judge Gilman's question about Mr. Yates' actual sentence, this is someone whose picture of rehabilitation actually improved by resentencing. He was a model inmate, despite the fact that he had 30 years of time to do when he was originally sentenced. So when he returned to Judge Boyko's courtroom, he was actually in a better position. And he got a lesser sentence for that reason, right? He did, but that variance was pretty minor compared to where the career offender put him, compared to where his guidelines would have been without its application. So I would ask this court to consider that applying career offender for the first time at resentencing, particularly when there's no negative change in material factors per se, unreasonable. Thank you very much, both of you. Thank you for your argument. The case will be submitted.